## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UZMA MALIK, | : | Civil No. 3:19-CV-01547 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WYOMING VALLEY MEDICAL | : | |
| CENTER, P.C., *et. al*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Before the court is Defendant Dr. Michael Greenberg's motion to dismiss. (Doc. 17.)  Among other allegations not relevant to resolving this motion, Plaintiff alleges that Defendant Greenberg committed violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), in addition to the state law tort of intentional infliction of emotional distress.  Defendant Greenberg seeks to dismiss each of Plaintiff's claims against him for failure to state a claim under Rule 12(b)(6).  The court finds that Plaintiff has sufficiently alleged a claim of FMLA retaliation, but has not pled facts sufficient to state a claim of FMLA interference, EPA violation, or intentional infliction of emotional distress.  For the reasons that follow, the court grants in part and denies in part Defendant Greenberg's motion to dismiss.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Dr. Uzma Malik filed suit against Defendants Wyoming Valley Medical Center, P.C., Geisinger Health System, Dr. Anand Mahadevan, and Dr. Michael Greenberg, alleging violations of the Americans with Disabilities Act ("ADA"), 42 USC §§ 12101 *et. seq.*, the FMLA, and the EPA, in addition to various state law tort claims.  (*See* Doc. 11.)  Plaintiff only seeks relief from Defendant Greenberg under three of these causes of action by alleging that all the Defendants, including Defendant Greenberg, committed violations of the FMLA and the EPA, in addition to the state law tort of intentional infliction of emotional distress.  (*Id.* at ¶¶ 22, 24, 25.) [1]

The following factual background is gleaned from Plaintiff's amended complaint, and is assumed to be true for the purpose of ruling on the pending motion to dismiss.  Plaintiff is a board-certified physician who specializes in radiation oncology and cancer treatment.  (*Id.* at ¶ 16.)  She suffers from a variety of chronic conditions including diabetes, fibromyalgia, back and limb issues, lumbar disc diseases, and cyst problems.  (*Id.* at ¶ 20.)  About 13 years ago, she began working at Defendant Wyoming Valley Medical Center, which is owned and operated by Defendant Geisinger Health System.  (*Id.* at ¶¶ 12, 17.)  Defendant

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

Mahadevan, the chairman of the radiation oncology department at Wyoming

Valley Medical Center, and Defendant Greenberg, another "high level manager"

there, oversaw and managed Plaintiff's work.  (*Id.* at ¶¶ 10–11, 19, 83.)

In January 2018, Plaintiff began discussing her intention to take FMLA

leave from the beginning of February through May of 2018.  (*Id.* at ¶ 25.)  A week

before she began her leave, Defendants announced that they were eliminating her

position as radiation oncology director and creating a new but "virtually identical"

director-level position for the department, the northeast regional radiation

oncology director, effective January 31, 2018.  (*Id.* at ¶¶ 25–27.)  The restructuring

reduced her to an "associate" in the department on the day before her leave was

scheduled to begin.  (*Id.* at *¶¶* 25–26.)  While Plaintiff was on leave, Defendant

Greenberg filled in for her.  (*Id.* at ¶ 27.)  At the end of her leave in May 2018, she

applied for the newly restructured director-level position, but she was "not given

meaningful consideration or hired for the job."  (*Id.* at ¶ 27-28.)  When she

returned to work from FMLA leave, she was reinstated as an associate in the

radiation oncology department.  (*Id.* at ¶ 30.)  Effective July 2018, Defendant

Greenberg assumed the role of northeast regional radiation oncology director.  (*Id.*

at ¶ 29.)

Upon returning to work, Plaintiff contends that Defendants subjected her to

a "very hostile work environment," due to repeated discipline, admonishment,

scrutiny, ostracism, derogatory treatment, disparate treatment with respect to company policies, negative references concerning the quality of her health, and failures to provide her with medical accommodations. (*Id.* at ¶¶ 34–35.) In early 2019, Defendant Greenberg referred Plaintiff to Pennsylvania's medical licensure board for evaluation due to concerns that she was not fit to practice medicine in connection with an alleged addiction to prescription pills. (*Id.* at ¶¶ 40–41, 48.) Plaintiff was required to leave work for five weeks to undergo an investigation by the State, which included submitting to extensive medical evaluations. (*Id.* at ¶ 43.)

On May 17, 2019, Pennsylvania approved Plaintiff to resume practicing medicine and confirmed that it would not proceed with any disciplinary action two months later. (*Id.* at ¶ 50.) In early July, Defendants suspended Plaintiff for leaving work two hours early when she was feeling sick. (*Id.* at ¶¶ 61–62.) Later that month on July 23, 2019, Defendants converted Plaintiff's suspension into termination for allegedly making a false entry in a patient chart. (*Id.* at ¶ 69.)

Plaintiff commenced this action against Defendants on September 6, 2019. (Doc. 1.) She subsequently filed an amended complaint adding another cause of action against Defendants Wyoming Valley Medical Center and Geisinger Health System. (Doc. 11.) On December 6, 2019, Defendant Greenberg filed a motion to

dismiss the claims against him.  (Doc. 17.)[2]  On December 23, 2019, Plaintiff filed

a brief in opposition to Defendant Greenberg's motion, and Defendant Greenberg

submitted a timely reply brief.  (Docs. 19–20.)  Defendant Greenberg's motion to

dismiss has been fully briefed and is ripe for review.

## JURISDICTION

Plaintiff alleges various violations of the FMLA and the EPA against Dr.

Greenberg.  (*See* Doc. 11, at ¶¶ 22, 24.)  Pursuant to 28 U.S.C. § 1331, this court

has jurisdiction over claims that arise under the laws of the United States.  Plaintiff

also alleges a state law claim for intentional infliction of emotional distress, which

stems from the same controversy as the alleged violations of the FMLA and the

EPA.  (*Id.* at 25.)  Pursuant to 28 U.S.C. § 1367, this court has jurisdiction over the

state law claim because it is sufficiently related to the federal claims in the action

that it forms part of the same case or controversy.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the

plaintiff pleads factual content that allows the court to draw the reasonable

---

[2] The remaining Defendants filed an answer, Doc. 14.

inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

### DISCUSSION

### A. Plaintiff has sufficiently alleged that Defendant Greenberg exercised supervisory authority over her under the FMLA and the EPA.

Plaintiff alleges that Defendant Greenberg can be held individually liable for violations of the FMLA, for interference and retaliation, and the EPA amendment to the Fair Labor Standards Act ("FLSA"), for gender-based pay disparities, because he exercised supervisory authority over her. (*See* Doc. 11 at ¶¶ 22, 24.) In response, Defendant Greenberg argues that Plaintiff's claims under the FMLA and the FLSA should be dismissed because Plaintiff has failed to plead facts that establish that Defendant Greenberg exercised any control over her employment. (*See* Doc. 18, at 8, 11.)

Upon review of this issue, the court concludes that Defendant Greenberg exercised supervisory authority over Plaintiff for the purposes of finding individual liability under the FMLA and the FLSA. The FMLA, 29 U.S.C. § 2611(4)(A)(ii), and the FLSA, 29 U.S.C. § 203(d), provide that an "employer" includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." The Third Circuit has held that both the FMLA and FLSA allow for the imposition of individual liability. *See, e.g., Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 667 F.3d 408, 414 (3d Cir. 2012) (stating that the FMLA permits individual liability); *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153–54 (3d Cir. 2014) (stating that the FLSA may impose individual liability).

To that end, "an individual supervisor working for an employer may be liable as an employer under the FMLA," *Haybarger*, 667 F.3d at 415, and a "company's owners, officers, or supervisory personnel may also constitute 'joint employers' for purposes of liability under the FLSA." *Thompson*, 748 F.3d at 153. An individual may be held liable as an employer under the FMLA and the FLSA, when he exercises "supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation while acting in the employer's interest." *Haybarger*, 667 F.3d at 417 (internal quotation omitted); *Thompson*, 748 F.3d at 153 (citing *Haybarger*, 667 F.3d at 417).

The Third Circuit uses the "economic reality" test to determine whether an individual exercised "supervisory authority" over an employee. *Haybarger*, 667 F.3d at 417–18.  In applying the "economic reality" test, courts should consider whether the individual:

> (1) had the power to hire and fire the employee, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.

*Id.* at 418 (internal quotation and alteration omitted).  This assessment "depends on the totality of the circumstances rather than 'technical concepts of the employment relationship" and "no one of the four factors standing alone is dispositive."  *Id.* (internal quotation and alteration omitted).

Here, Plaintiff has sufficiently alleged facts to demonstrate that Defendant Greenberg exercised supervisory authority over her.  First, Plaintiff alleges that "at all times relevant to the allegations in this lawsuit," Defendant Greenberg was a "high-level manager" at Wyoming Valley Medical Center and Geisinger Health System.  (*See* Doc. 11, at 10.)  Second, she alleges that Defendant Greenberg personally managed and oversaw Plaintiff's work.  (*Id.* at ¶ 84.)  Third, she avers that Defendant Greenberg had the authority to discipline and counsel her, he prepared "performance-related documentation" regarding her, and he referred her to the Pennsylvania medical licensure board due to suspicions about her fitness to practice medicine.  (*Id.* at ¶¶ 40–41, 48, 83.)  Fourth, she contends that Defendant

Greenberg took part in her removal from the radiation oncology director position, her non-hire for the newly created director-level position in the department resulting in her reduction to an associate, her suspension, and her termination. (*Id.* at ¶ 25, 83.)

Viewing these facts in the light most favorable to Plaintiff, she has sufficiently alleged that Defendant Greenberg exerted supervisory authority over her. *See Haybarger*, 667 F.3d at 418 (finding that an individual exercised sufficient control over the plaintiff's employment because he "exercised substantial authority over [the plaintiff's] termination decision, even if he lacked final authority to dismiss her" and "exercised significant control over the conditions of [her] employment" because he monitored her performance and disciplined her when dissatisfied with her work); *Edelman v. Source Healthcare Analytics*, LLC, 265 F. Supp. 3d 534, 540 (E.D. Pa. 2017) (holding that the plaintiff alleged sufficient facts to establish that the defendant exercised supervisory authority over her by pleading that he "had the power to fire her" and "supervised and controlled her work schedule"); *McDonald v. SEIU Healthcare Pennsylvani*a, No. 1:13-CV-2555, 2014 WL 4672493, at *18 (M.D. Pa. Sept. 18, 2014) (holding that the plaintiff alleged sufficient facts to establish that the defendants exercised supervisory authority over her by "point[ing] to specific instances in which these defendants exercised their supervisory role over her or her work schedule.").

Having concluded that Plaintiff has sufficiently alleged that Defendant Greenberg exercised supervisory authority over her, the court will assess the substance of Plaintiff's FMLA and FLSA claims to determine whether Plaintiff has alleged sufficient facts to allow the claims to proceed.

### B. Plaintiff has sufficiently alleged a prima facie case of FMLA retaliation against Defendant Greenberg.

The FMLA protects individuals from discrimination based on the exercise of their FMLA rights under its "retaliation" provisions. *See* 29 U.S.C. § 2615(a)(1)–(2); 29 C.F.R. § 825.220(c) ("An employer is prohibited from discriminating against employees ... who have used FMLA leave."). To that end, employers cannot "use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c). Plaintiff alleges that Defendant Greenberg is liable for FMLA retaliation because Defendant Greenberg took several adverse actions "against her due to her FMLA protected activities." (*See* Doc. 19, at 11.) In response, Defendant Greenberg argues that Plaintiff's FMLA retaliation claim fails because Plaintiff has not alleged any facts to demonstrate "a causal connection between her use of FMLA leave and any action by Defendant Greenberg." (*See* Doc. 18, at 7.)[3]

---

[3] Defendant Greenberg argues throughout his brief in support that the only action in Plaintiff's complaint "attributed to [Defendant Greenberg] is a referral to the state licensing board which led to medical evaluations aimed at assessing [Plaintiff's] fitness to practice medicine." (*See* Doc. 18, at 6, 7, 12–13.) This assertion is incorrect as Plaintiff includes Defendant Greenberg in

Case 3:19-cv-01547-JPW   Document 24   Filed 06/22/20   Page 11 of 28

Courts have analyzed FMLA retaliation claims "through the lens of employment discrimination law" because these claims require proof of the employer's retaliatory intent. *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 151 (3d Cir. 2017). To establish a prima facie case of FMLA retaliation, a plaintiff must demonstrate that:

> (1) he invoked his right to FMLA-qualifying leave; (2) he suffered an adverse employment decision; and (3) the adverse action was causally related to his invocation of rights.

*Id.* at 152, n.6 (citing *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014)).

Regarding the first element, the plaintiff must demonstrate that she is entitled to FMLA leave. 29 U.S.C. § 2612(a)(1). An individual is entitled to FMLA leave if she is an "eligible employee" under the FMLA and suffers from a serious medical condition. 29 U.S.C. § 2612(a)(1)(D). "Eligible employee" is defined as an individual who has been employed for at least twelve months by the employer from whom she is requesting leave, and has served at least 1,250 hours with a covered employer during the previous twelve-month period. 29 U.S.C. § 2611(2)(A). An employer is subject to the FMLA when he engages in an industry in or affecting commerce and "employs 50 or more employees for each working

---

her references to actions taken by the "Defendants." (*See* Doc. 11, at ¶ 1.) Therefore, any action in the complaint that is attributed to "Defendants" is attributed to Defendant Greenberg.

day during each of 20 or more calendar workweeks in the current or preceding

calendar year."  29 U.S.C. § 2611(4)(a)(1).

Here, with respect to the first element, Plaintiff has sufficiently pled that she

used FMLA-qualifying leave.  Plaintiff alleges that Defendant Greenberg is subject

to the FMLA because he was acting on behalf of an employer who "engaged in an

industry affecting interstate commerce which employs fifty (50) or more

employees for each working day during each of the twenty (20) or more calendar

work weeks in the current or preceding calendar year."  (*See* Doc. 11, at ¶ 81.)

Plaintiff further pleads that she is an "eligible employee" who qualified for leave

under the FMLA because she had been employed by Defendants for at least twelve

months, "had at least 1,250 hours of service during her last full year of

employment," and received approval for twelve weeks of leave from February-

May 2018 due to her serious health conditions. [4]  (*Id.* at ¶¶ 22–23, 78–80, 82.)

Regarding the second element, "adverse employment action" is defined as

any action that "alters the employee's compensation, terms, conditions, or

privileges of employment, deprives him or her of employment opportunities, or

adversely affects his or her status as an employee."  *Budhun v. Reading Hosp. &*

---

[4] To the extent that Plaintiff also alleges that she sought to use FMLA leave on July 2, 2019, so that she could leave two hours early from work for feeling ill (*see* Doc. 11, at ¶ 62), Plaintiff has not pled facts sufficient to demonstrate that her two-hour departure constituted FMLA qualifying leave under 29 U.S.C.A § 2612 (a)(1).

*Med. Ctr.*, 765 F.3d 245, 257 (3d Cir. 2014) (internal quotation omitted).  Some

examples of adverse employment actions recognized by the Supreme Court include

a "significant change in employment status, such as hiring, firing, failing to

promote, reassignment, or a decision causing a significant change in benefits."

*Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 749 (1998).

    With respect to the second element, Plaintiff has sufficiently alleged that she

suffered an "adverse employment action," though not with respect to each of the

claimed actions.  Plaintiff claims that she experienced the following adverse

actions: (1) eliminating her director-level role and failing to hire her for the newly

restructured director-level position, resulting in her reduction to an associate in the

radiation oncology department; (2) referring her to Pennsylvania's medical

licensure board, requiring her to miss five weeks of work; (3) subjecting her to

discipline and counseling; and (4) converting her suspension into a termination.

(*See* Doc. 11, at ¶¶ 25, 30, 83.)  The first and fourth claimed actions rise to the

level of an adverse employment action.  While it is clear that Plaintiff's

termination constitutes an adverse employment action, Plaintiff's removal from her

director-level position and her reduction to an associate also qualify.  Plaintiff has

sufficiently alleged that this role alteration, from a director to an associate, was

essentially a demotion because the associate position was lesser-paying, non-

supervisory, less prestigious, and detrimental to her career and earning capacity

internally and externally.  (*Id.* at ¶ 30.)  *See Budhun*, 765 F.3d at 257 (stating that a

complete elimination of the plaintiff's job responsibilities constituted an adverse

employment action because it "significantly altered [her] duties and status"); *Caver*

*v. City of Trenton*, 420 F.3d 243, 256 (3d Cir. 2005) (stating that the plaintiff's

"transfer" to a different job constituted an adverse employment action in that it

"significantly altered his duties and status," "carried much less prestige" than his

former position, and "was essentially a demotion").

     However, the second and third claimed actions taken by Defendant

Greenberg do not rise to the level of an adverse employment action.  *See*, 420 F.3d

at 256 (finding that "ordering [the plaintiff] to see a psychiatrist, without more, did

not adversely affect his status as an employee" and thus did not constitute an

adverse employment action); *Sabbrese v. Lowe's Home Centers, Inc.*, 320 F. Supp.

2d 311, 320 (W.D. Pa. 2004) (finding that an employer's "written reprimand" did

not constitute an adverse employment action because it did not adversely affect her

status as an employee).

     Regarding the third element, to demonstrate a prima facie case of causation,

a plaintiff "must point to evidence sufficient to create an inference that a causative

link exists between her FMLA leave and [the adverse employment action]."

*Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 307 (3d Cir. 2012).

Generally, a plaintiff must establish "either (1) an unusually suggestive temporal

proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Budhun*, 765 F.3d at 258 (internal quotation omitted). A "bright line rule as to what constitutes unduly suggestive temporal proximity" does not exist. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007). At the prima facie stage, courts have found temporal proximity sufficient to suggest a causative link when several days have elapsed between the protected activity and the adverse action. *See, e.g.*, *Lichtenstein*, 691 F.3d at 307 (finding seven days unduly suggestive); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir.1989) (finding two days unduly suggestive).

With respect to the third element, Plaintiff has sufficiently alleged a suggestive temporal proximity between her director-level role elimination and her use of FMLA leave. However, Plaintiff has failed to allege any sort of causal connection or temporal proximity between her termination in July of 2019 and her use of FMLA leave in early 2018. (*See* Doc. 11.) *See Johnson v. Philadelphia Police Dep't*, No. CV 14-1036, 2015 WL 12914147, at *3 (E.D. Pa. July 20, 2015), *aff'd*, 657 F. App'x 83 (3d Cir. 2016) ("The mere fact that [an] adverse employment action occurs after a protected activity will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between

the two events." (internal quotation and alteration omitted)).  On the other hand,

Plaintiff pleads:

> ***After*** Plaintiff had discussed her anticipated FMLA leave ***and*** medical accommodation needs for many months, Defendants announced (on or about January 25, 2018) that Plaintiff's then position of Director, Radiation Oncology, was being eliminated through a restructuring effective January 31, 2018. This announcement was *approximately a week* before Defendants knew Plaintiff's February-May 2018 FMLA leave was to commence.

(*Id.* at ¶ 25) (emphasis in original).  Here, approximately one week elapsing

between the elimination of her director-level position and the start of her FMLA

leave, is in the range of what courts have found to be adequate temporal proximity

at this stage.  Thus, Plaintiff has sufficiently alleged a suggestive temporal

proximity between an adverse employment action that she suffered and her use of

FMLA leave.  Since Plaintiff has adequately pled each element of a prima facie

case of FMLA retaliation, the court will deny Defendant Greenberg's motion to

dismiss Plaintiff's FMLA retaliation claim.

### C. Plaintiff has not sufficiently alleged a claim of FMLA interference against Defendant Greenberg.

The FMLA also provides "a series of prescriptive substantive rights for

eligible employees, often referred to as the 'entitlement' or 'interference'

provisions which set floors for employer conduct."  *Jezek v. Medco Health Sols.,*

*Inc.*, No. CIV. 10-4410 DRD, 2012 WL 209372, at *5 (D.N.J. Jan. 24, 2012)

(citing *Callison v. City of Philadelphia,* 430 F.3d 117, 119 (3d Cir.2005)).  Plaintiff

alleges that Defendant Greenberg interfered with her rights under the FMLA by subjecting her to a hostile work environment. (*See* Doc. 19, at 10.) In response, Defendant Greenberg argues that Plaintiff's FMLA interference claim fails because she "does not allege that she was denied any benefit to which she was entitled under the FMLA." (*See* Doc. 18, at 7.)

To establish a prima facie case of FMLA interference, a plaintiff must demonstrate that:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

*Capps*, 847 F.3d at 155 (quoting *Ross*, 755 F.3d at 191–92). Such FMLA benefits or entitlements are: (1) "a total of twelve workweeks of leave during any twelve-month period" if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee," 29 U.S.C. § 2612(a)(1)(D), and (2) reinstatement to the employee's former position or a position with equivalent pay, benefits, and working conditions, 29 U.S.C. § 2614(a)(1). A FMLA interference claim does not require an employee to prove that his employer acted with discriminatory intent; instead "it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." *Capps*, 847 F.3d at 155. Unlike with a FMLA retaliation claim, an

employer cannot justify FMLA interference by proffering a legitimate business purpose for such action. *Atchison v. Sears*, 666 F. Supp. 2d 477, 489 (E.D. Pa. 2009) (quoting *Callison*, 430 F.3d at 119–20).

Here, Plaintiff has adequately pled the first, second, and third elements. As previously noted, Plaintiff was an "eligible employee" under the FMLA (*see* Doc. 11 at ¶¶ 78–80, 82), Defendant Greenberg exercised supervisory authority over her on behalf of an employer subject to the FMLA (*id.* at ¶¶ 81, 83–84), and Plaintiff was entitled to FMLA leave (*id.* at ¶¶ 22–23, 78-80, 82.) Plaintiff has sufficiently alleged the fourth element, inasmuch as Plaintiff discussed with Defendants her intention to take approved FMLA leave in January 2018. (*Id.* at ¶¶ 22, 24–25.) She explains that "[i]n the approximate 6 months leading up to [her] February-May 2018 FMLA leave, Plaintiff discussed with Defendants' management: (1) her specific health conditions; (2) anticipated medical leave . . . and (3) her anticipated treatment / therapy regimen." (*Id.* at ¶ 24.)

Plaintiff, however, has not sufficiently pled the fifth element of FMLA interference. Plaintiff states that Defendant Greenberg interfered with her rights under the FMLA by scrutinizing her, disciplining her, causing her to be removed from work for five weeks to undergo medical evaluations, excluding her from meetings, and engaging in abusive treatment weekly. (*See* Doc. 19, at 10.) While such behavior may have been inappropriate, these alleged actions fail to

demonstrate that Defendant Greenberg harassed Plaintiff in order to discourage her from exercising her right to FMLA leave.  *See Fisher v. Schott*, No. CIV.A. 13-5549 ES, 2014 WL 6474216, at *2, 4 (D.N.J. Nov. 19, 2014) (holding that the plaintiff had sufficiently pled a claim for FMLA interference by stating "that she was directly threatened by [the defendant] with being fired, and was repeatedly harassed and intimidated by [the defendant]," "discouraging, dissuading and chilling [the plaintiff's] exercise of her leave rights"); *Olschefski v. Red Lion Area Sch. Dist.*, No. 1:12-CV-871, 2012 WL 6003620, at *11 (M.D. Pa. Nov. 30, 2012) (finding that a plaintiff had sufficiently alleged a FMLA interference claim by stating that the defendant, among other things, "discouraged her from utilizing FMLA leave by imposing discipline on her"); *Reinhold v. Cty. of York, Pa.*, No. 1:11-CV-605, 2012 WL 4104793, at *12 (M.D. Pa. Aug. 31, 2012) (holding that plaintiff had sufficiently alleged an FMLA interference claim by stating that the defendants, among other things, failed to approve reasonable requests for medical leave, discouraged her from using FMLA leave by disciplining her, and attempted to coerce her to retire instead of letting her take leave).  Moreover, Plaintiff has failed to allege that Defendant Greenberg denied Plaintiff her right to reinstatement.  Since Plaintiff has failed to plead facts sufficient to establish the fifth element of a FMLA interference claim, the court will dismiss Plaintiff's FMLA interference claim without prejudice.

### D. Plaintiff has not sufficiently alleged that Defendant Greenberg violated her rights under the EPA.

Plaintiff alleges that Defendant Greenberg is responsible in whole or part for violating her rights under the FLSA's EPA provision. (*See* Doc. 11, at 24.) In response, Defendant Greenberg argues that Plaintiff's EPA claim fails because she does not allege facts plausibly showing that Defendant Greenberg was responsible for any action that may constitute a violation of the EPA. (*See* Doc. 19, at 9.)

The EPA prohibits employers from compensating male and female employees with unequal wages for equal work. 29 U.S.C. § 206(d)(1). To establish a prima facie case of an EPA violation, the plaintiff must demonstrate "that employees of the opposite sex were paid differently for performing equal work—work of substantially equal skill, effort and responsibility, under similar working conditions." *Gumbs v. Delaware Dep't of Labor*, 745 F. App'x 457, 459 (3d Cir. 2018). In assessing whether two jobs are equal, courts must determine "whether the jobs to be compared have a common core of tasks, *i.e.*, whether a significant portion of the two jobs is identical." *Id.* at 459–60 (internal quotation omitted).

Here, Plaintiff alleges that "[d]espite being of ***at least equal*** in qualification, level of experience, and education," she "was not paid in the same manner as similarly situated male colleagues for several years leading up to her termination from employment." (*See* Doc. 11, at ¶¶ 86–87) (emphasis in original). She further

pleads that Defendant Greenberg "exhibited a discriminatory level of compensation premised upon gender" because her "male colleagues . . . were paid at higher levels of compensation."  (*Id.* at ¶ 87.)

Plaintiff has failed to allege that Defendant Greenberg violated the EPA because her claims of gender-based pay disparities are conclusory and lack sufficient factual support.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  First, Plaintiff has not alleged any facts about the identity or number of her male colleagues in either of her positions at Wyoming Valley Medical Center, *i.e.*, radiation oncology director or associate in the radiation oncology department, who were receiving different compensation. *See Jones v. Amerihealth Caritas*, 95 F. Supp. 3d 807, 813 (E.D. Pa. 2015) (holding that the plaintiff had pled sufficient facts to sustain a prima facie case under the EPA by naming "three women that he claim[ed] were paid more than him for doing similar work" and stating that "these three women were less qualified for the position with the same or less level of seniority").  Second, considering that Plaintiff held different positions at Wyoming Valley Medical Center, it is unclear what tasks she performed for which Defendant Greenberg compensated her male colleagues at higher levels.  Thus, the court will dismiss without prejudice Plaintiff's EPA violation claim.

**E. Plaintiff has not sufficiently alleged a claim of intentional infliction of emotional distress against Defendant Greenberg.**

Plaintiff alleges that Defendant Greenberg is liable for intentional infliction of emotional distress.  (*See* Doc. 11, at 25.)  In response, Defendant Greenberg argues that his referral of Plaintiff to Pennsylvania's medical licensing board "is insufficient as a matter of law to give rise to liability for intentional infliction of emotional distress."  (*See* Doc. 18, at 12.) [5]

Although the Pennsylvania Supreme Court has not recognized a cause of action for intentional infliction of emotional distress, the Pennsylvania Superior Court has recognized this cause of action.  *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010); *see also Capresecco v. Jenkintown Borough*, 261 F. Supp. 2d 319, 323 (E.D. Pa. 2003) ("Pennsylvania courts have 'signaled their acceptance of this evolving tort,' and that it may be applied as part of Pennsylvania common law." (quoting *Williams v. Guzzardi*, 875 F.2d 46, 50 (3d Cir. 1989)).  To prevail on an intentional infliction of emotional distress claim, the plaintiff must "at the least, demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff" and results in some "some type of [] physical harm."  *Reedy*, 615 F.3d at 231; *see also Corbett v. Morgenstern*, 934 F.

---

[5] As stated above, Defendant Greenberg is incorrect in arguing that the only action attributed to him in Plaintiff's complaint relates to his referral of Plaintiff to Pennsylvania's medical licensure board.  Any action in the complaint that is attributed to "Defendants" is attributed to Defendant Greenberg.  (*See* Doc. 11, at ¶ 1.)

Supp. 680, 684–85 (E.D. Pa. 1996) (finding that symptoms of severe depression, nightmares, stress, and anxiety, requiring psychological treatment, and ongoing mental, physical, and emotional harm sufficiently state physical injury). Pennsylvania courts have found liability on intentional infliction of emotional distress claims only "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Field v. Phila. Elec. Co.*, 565 A.2d 1170, 1184 (Pa. Super. Ct. 1989).  With respect to the workplace, the Third Circuit has stated that it is "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Clark v. Twp. of Falls*, 890 F.2d 611, 623 (3d Cir. 1989); *see also Andrews v. City of Philadelphia*, 895 F.2d 1469, 1487 (3d Cir. 1990) (noting that generally, in the employment context, "sexual harassment alone does not rise to the level of outrageousness necessary to make out a cause of action for intentional infliction of emotional distress.").

Here, Plaintiff alleges that Defendant Greenberg is liable for intentional infliction of emotional distress for a variety of reasons.  Plaintiff pleads that Defendant Greenberg discriminated and retaliated against her by (1) eliminating her position as radiation oncology director; (2) failing to hire her for the newly

restructured director-level position resulting in her reduction to an associate; (3)

suspending her; and (4) terminating her.[6]  (*See* Doc. 11, at ¶¶ 31, 40, 63.)

Additionally, Plaintiff contends that Defendant Greenberg failed to remedy the

hostile work environment that she experienced upon returning to work after her

FMLA leave.  (*Id.* at ¶ 35.)  According to Plaintiff, such hostility included, but was

not limited to, repeated admonishment, scrutiny, ostracism, derogatory behavior,

unfair treatment regarding the fair use of company policies, blanket denial of very

reasonable medical accommodations, and negative comments concerning her

health.  (*Id.* at ¶¶ 33–34, 35.)  Plaintiff further alleges that Defendant Greenberg's

behavior was "intentional and/or reckless," and "so outrageous it surpassed all

bounds of decency in civilized society."  (*Id.* at ¶ 93.)  Defendant Greenberg's

conduct has caused her to suffer "severe emotional distress" and "medical injuries

by wrongful referral to medical evaluations through significant side effects."  (*Id.*)

---

[6] In the complaint, Plaintiff also provides Defendant Greenberg's referral of her to
Pennsylvania's medical licensure board as factual support for her intentional infliction of
emotional distress claim.  (*See* Doc. 11, at ¶¶ 40-43.)  The Superior Court of Pennsylvania has
held "that public policy compels affording the absolute privilege to individuals that report
misconduct to the Board of Medicine, regardless of their motives for doing so."  *Greenberg v.
McGraw*, 161 A.3d 976, 988 (2017).  Thus, the absolute privilege extends "to statements made to
the Board of Medicine for the purpose of initiating judicial or quasi-judicial proceedings against
a licensee, even if such statements are allegedly false," as an incentive for individuals to speak
freely when initiating such proceedings.  (*Id.* at 988–89.)  Because referrals to Pennsylvania's
medical licensure board receive the absolute privilege, they cannot form the basis of intentional
infliction of emotional distress claims.  (*Id.* at 989.)  In Plaintiff's brief in opposition, she
concedes that Defendant Greenberg's referral cannot form the basis of her intentional inflection
of emotion distress claim.  (*See* Doc. 19, at 13–14.)  Therefore, the court has not considered the
referral as a potential basis for her intentional infliction of emotional distress claim.

Plaintiff has not sufficiently alleged an intentional infliction of emotional distress claim against Defendant Greenberg.  Plaintiff has catalogued a substantial amount of behavior attributable to Defendant Greenberg that, if proven true, would certainly be improper.  However, none of the alleged actions, in isolation or together, rise to the level of depravity that has traditionally formed the basis of successful intentional infliction of emotional distress claims.  *See, e.g., Papieves v. Lawrence*, 263 A.2d 118, 119 (Pa. 1970) (finding conduct outrageous where the defendant struck the plaintiff's son with his car, killed him, and buried his body in a field where he was discovered months later); *Field*, 565 A.2d at 1183–84 (finding conduct outrageous where the defendant purposefully vented highly radioactive steam on the plaintiff and attempted to hide overexposure to radiation); *Banyas v. Lower Bucks Hospital*, 437 A.2d 1236 (Pa. Super. Ct. 1981) (finding conduct outrageous where the defendant framed the plaintiff for murder by preparing false records).

The conduct that Plaintiff has alleged concerning workplace misconduct is more similar to the behavior that Pennsylvania courts have considered not sufficiently outrageous to constitute an intentional infliction of emotional distress claim.  *See, e.g., Capresecco v. Jenkintown Borough,* 261 F. Supp. 2d 319, 323 (E.D. Pa. 2003) ("[W]hile loss of employment is unfortunate and unquestionably causes hardship, often severe, it is a common event and cannot provide a basis for

recovery for [intentional infliction of emotional distress].”); *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395–96 (3d Cir.1988) (finding conduct not outrageous where employer dismissed the plaintiff with an improper motive, “endangering his chances of collecting medical and disability benefits” and “jeopardizing his chances to obtain alternate employment”); *Duffy v. SEPTA*, No. Civ. A. 94–4260, 1995 WL 299032, at *4–5 (E.D. Pa. May 12, 1995) (finding conduct not outrageous where employer denied the plaintiff various assignments, removed her from her work team, and failed to invite her to certain training-critique sessions); *Alexander v. Hargrove*, No. Civ.93–5510, 1994 WL 313059, at *6–7 (E.D. Pa. June 28, 1994) (finding conduct not outrageous where employer “coerced [the plaintiff's] termination while knowing that this would attach a stigma of wrongdoing to him that would make him unemployable and destroy his career, family and health”).

Moreover, Plaintiff's allegations of “physical harm” are conclusory. Plaintiff states that she suffered “severe emotional distress” and “medical injuries by wrongful referral to medical evaluations through significant side effects.” (*See* Doc. 11, at ¶ 93.)  Nowhere in the complaint, however, does Plaintiff provide factual support for these assertions by stating how her already extensive list of health issues worsened or new symptoms of a physical injury, harm, or illness appeared as a result of Defendant Greenberg's conduct. *See James v. City of*

*Wilkes-Barre*, No. 3:10-CV-1534, 2011 WL 3568900, at *8 (M.D. Pa. June 17,

2011) (stating that "it is not enough to merely allege severe distress" to sufficiently

plead physical injury in connection with an intentional infliction of emotional

distress claim).  Accordingly, the court will dismiss without prejudice Plaintiff's

intentional infliction of emotional distress claim.

### F.  Plaintiff will be granted leave to amend.

In her brief in opposition to the motion to dismiss, Plaintiff requests that she

be given leave to amend in so far as her complaint is found deficient in any respect.

(*See* Doc. 18, at 15).  Third Circuit "precedent supports the notion that in civil

rights cases district courts must offer amendment - irrespective of whether it is

requested - when dismissing a case for failure to state a claim unless doing so

would be inequitable or futile."  *Fletcher-Harlee Corp. v. Pote Concrete*

*Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

Here, the court will grant Plaintiff's request because it is possible that she

could present a viable FMLA interference claim, EPA claim, and/or IIED claim

against Defendant Greenberg.  To the extent that Plaintiff wishes to amend her

complaint with regard to any of these three causes of action, she will be given 14

days in which to do so.

## CONCLUSION

For the foregoing reasons, the court will grant in part and deny in part Defendant Greenberg's motion to dismiss.  Defendant Greenberg's motion to dismiss Plaintiff's FMLA retaliation claim will be denied.  Defendant Greenberg's motion to dismiss Plaintiff's FMLA interference claim, EPA claim, and IIED claim will be granted, these claims will be dismissed without prejudice, and Plaintiff will be given leave to amend.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: June 22, 2020